IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR CHARLOTTE COUNTY, FLORIDA

JEREMY RICHARDSON and MANDY )
LARSON, on behalf of themselves and all )
others similarly situated, ) Case No.: 18000943CA
)
    Plaintiffs, )
) CLASS REPRESENTATION
v. )
) JURY TRIAL DEMANDED
PROGRESSIVE AMERICAN INSURANCE )
COMPANY, PROGRESSIVE SELECT )
INSURANCE COMPANY, J.D. POWER & )
ASSOCIATES, and MITCHELL )
INTERNATIONAL, INC., )
)
    Defendants. )

## CLASS ACTION COMPLAINT

Plaintiffs, Jeremy Richardson and Mandy Larson, on behalf of themselves and all others similarly situated (collectively, "**Plaintiffs**"), by and through the undersigned counsel, file this Class Action Complaint against Defendants, Progressive American Insurance Company, Progressive Select Insurance Company, (collectively, "**Progressive**"), J.D. Power & Associates ("**J.D. Power**"), and Mitchell International, Inc. ("**Mitchell**") (collectively, "**Defendants**"), and state:

## NATURE OF THE ACTION

1.     This Florida class action arises from Defendants' systemic and intentionally wrongful and improper valuation of total losses involving the vehicles of Progressive first party insureds.

2.     Progressive has spent many tens of millions of dollars to market itself as a fair and honest insurance company. However, Progressive and its co-conspirators, Mitchell and J.D.

Power, are not fair and honest in providing valuations to Progressive insureds whose vehicles have been involved in an accident and are determined to be a total loss.

3.      Through its auto insurance policy contracts, Progressive has agreed to provide, *inter alia*, collision coverage for losses resulting from damage to insureds' vehicles. When the costs of repairs exceed a specified percentage of the vehicle's value). Florida law requires Progressive to declare the vehicle a total loss and provide a settlement based on actual cost to purchase a comparable vehicle. Florida St. § 626, 9743(5) (the "Florida Total Loss Statute" or "Total Loss Statute").

4.      As alleged hereafter, J.D. Power and Mitchell have formed a joint partnership to provide total loss valuation reports to insurers such as Progressive, J.D. Power and Mitchell call these reports Work Center Total Loss ("WCTL") Reports.

5.      Typically, insurers contract with Mitchell to receive the WCTL reports prepared by the joint partnership.

6.      Specifically, Progressive has contracted with Mitchell to receive WCTL Reports to determine the "Market Value" of a total loss vehicle and the "Settlement Value" after any applicable deductible. Through this joint partnership and Mitchell's agreement with Progressive, Progressive, Mitchell and J.D. Power have engaged in a scheme to artificially deflate the value of the total loss claims to pay first party insureds less than the actual pre-loss under-value of the total loss vehicle.

7.      Plaintiffs and the Class, which consists of Condition Adjustment and Market Value Subclasses, are Progressive automobile insurance policy holders whose vehicles Progressive determined to be a total loss, and who have been subject to Progressive, Mitchell and J.D. Power's scheme to artificially deflate the value of their total loss claims.

2

8.      When it entered into the insurance contracts at issue in this case with Class Members, Progressive was aware, but failed to disclose to Plaintiffs, that its WCTL Valuation system would wrongfully value total loss vehicles. Through this scheme, Progressive, Mitchell and J.D. Power have engaged in unlawful conduct in violation of Florida law, common law and their respective contractual obligations, which have uniformly damaged Progressive insureds in Florida in a readily ascertainable dollar amount.

## PARTIES, JURISDICTION AND VENUE

9.      Plaintiff, Jeremy Richardson, is an adult citizen of Midway, Gadsden County, Florida.

10.      Plaintiff, Mandy Larson, is an adult citizen of Port Charlotte, Charlotte County, Florida.

11.      Plaintiffs bring this action in their individual capacities and on behalf of the Class of all other persons similarly situated in the state of Florida.

12.      Defendant Progressive American Insurance Company is a foreign profit corporation incorporated under the laws of the state of Ohio with a principal place of business in Mayfield Village, Ohio. Progressive issued an automobile liability insurance policy, including coverage for first-party total loss claims, to Plaintiff Larson and Class Members, and to many thousands of other insureds in Florida.

13.      Defendant Progressive Select Insurance Company is a foreign profit corporation incorporated under the laws of the state of Ohio with a principal place of business in Mayfield Village, Ohio. Progressive issued an automobile liability insurance policy, including coverage for first-party total loss claims, to Plaintiff Richardson and Class Members, and to many thousands of other insureds in Florida.

3

14.     Defendant J.D. Power is incorporated under the laws of the state of Delaware and has its principal place of business in Westlake, California. J.D. Power has entered into a joint partnership with Mitchell to prepare and provide to numerous national insurers such as Progressive with purported valuations for total loss vehicles. J.D. Power and Mitchell have received very substantial payments from Progressive and other insurers for such valuations.

15.     Defendant Mitchell is incorporated under the laws of the state of Delaware and has its principal place of business in San Diego, California. Mitchell has entered into a joint partnership with J.D. Power to prepare and provide to numerous national insurers such as Progressive with purported valuations for total loss vehicles.

16.     The damages in this case exceed $15,000.00, exclusive of interest, costs, and attorneys' fees.

17.     The Court has personal jurisdiction over Defendants. All facts giving rise to this action occurred in the state of Florida. Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and in this county, and/or maintained an office or agency in this state or county, and/or sold products, committed a statutory violation within this state or county related to the allegations made herein, and caused injuries to Plaintiffs and Class Members, which arose out of the acts and omissions that occurred in the state of Florida and this county, during the relevant time period, at which time Defendants were engaged in business activities in the state of Florida and in Charlotte County, resulting in injuries to Plaintiffs and Class Members.

## GENERAL FACTUAL ALLEGATIONS

### The Florida Total Loss Statute

18.   Under the terms of Progressive's standard policy (the "**Policy**") as modified by Florida's Total Loss Statute, Progressive is required to pay its insureds, such as Plaintiffs, an amount of money sufficient for Plaintiffs to purchase a <u>comparable replacement vehicle</u>, when their vehicles are deemed a total loss.

19.   Specifically, this regulation governs Progressive's adjustment of first-party total loss claims and establishes requirements for adjusting those claims.

20.   The Florida total loss regulation provides that:

(5) When the insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the following methods:

(a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9). Such cost may be derived from:

(1) When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days;

(2) The **retail cost** as determined from a generally recognized used motor vehicle industry source such as:

a.   An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request;  or

b.   A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request;  or

(3) The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area.

(b) The insurer may elect to offer a replacement motor vehicle that is a specified comparable motor vehicle available to the insured, including sales tax if applicable pursuant to subsection (9), paid for by the insurer at no cost other than any deductible provided in the policy and betterment as provided in subsection (6). The offer must be documented in the insurer's claim file. For purposes of this subsection, a comparable motor vehicle is one that is made by the same manufacturer, of the same or newer model year, and of similar body type and that has similar options and mileage as the insured vehicle. Additionally, a comparable motor vehicle must be in as good or better overall condition than the insured vehicle and available for inspection within a reasonable distance of the insured's residence.

(c) When a motor vehicle total loss is adjusted or settled on a basis that varies from the methods described in paragraph (a) or paragraph (b), the determination of value must be supported by documentation, and any deductions from value must be itemized and specified in appropriate dollar amounts. The basis for such settlement shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be retained in the insurer's claim file.

(d) Any other method agreed to by the claimant.

§ 626.9743(5) Fla. Stat. (2017) (emphasis added).

21.     The standard Progressive Policy provides that Progressive will pay a total loss insured the "actual value" of the total loss vehicle.

22.     The quoted provision of the Florida Total Loss Statute has the effect of setting the regulatory standard for adjusting total loss claims to which Progressive must adhere.

23.     Section 5 of the Total Loss Statute provides alternative methods for determining the "actual cost to purchase a comparable vehicle" at subparagraphs 5(a), 5(b), 5(c), and 5(d).

24.     In performing total loss valuations for Progressive's Florida insureds, J.D. Power and Mitchell does not purport to utilize the methods specified in subsection 5(a)(1) (cost of two comparable vehicles); 5(a)(3) (two or more retail quotations from two or more local dealers); 5(b) (offering a replacement vehicle); 5(c) (settlement based on other methods); or 5(d) (any other method agreed by claimant).

6

25.   Thus, the total losses at issue in this action are governed by section 5(a)(2) which requires the insurer to settle total loss claims based on "the retail cost as determined from a generally recognized used motor vehicle industry source."

26.   Section 5(a)(2) then provides that the "source" may be an "electronic data base" or "a guidebook that is generally available to the general public."   Examples of such a "guidebook" are the NADA, the Kelley Blue Book, or the Black Book guides.

27.   The WCTL Reports and J.D. Power and Mitchell valuation methodology are not generally recognized as required by 5(a)(2) because these Reports are used only by the insurance industry to improperly reduce total loss payments.

28.   Automobile dealers, banks, and other financing entities do not use WCTL Reports.

29.   Moreover, as alleged herein, the WCTL methodology is statistically invalid and, therefore, directly violates the Florida Total Loss Statute.

30.   Accordingly, the only remaining provision of the Total Loss Statute is Section 5(a)(2)(b) relating to generally available Guidebooks.  This subsection governs this action.

31.   Plaintiffs do not assert a private right of action under Florida's Total Loss Statute. Rather, Plaintiffs' breach of contract claim is based upon (1) Progressive's use of WCTL Vehicle Valuation Reports, which utilize statistically invalid methodologies, algorithms, values or computations when determining total loss valuations in Florida, and (2) failure to adjust total loss claims in the manner required by the Florida Total Loss Statute.

32.   That is, as a condition of doing business in Florida, Progressive's insurance policies and claim adjustment practices must comply with applicable statutes and regulations. Progressive's failure to so comply is a breach of the insurance policies.

**The Mitchell and J.D. Power Partnership**

**33.**     Mitchell and J.D. Power entered into a joint partnership to provide WCTL

Vehicle Valuation Reports to insurers, including Progressive. As explained in detail below,

WCTL Vehicle Valuation Reports include purported market values of total loss vehicles based

upon improper and unlawful methodologies.

34.     The partnership between Mitchell and J.D. Power is described in the first

paragraph of the WCTL Valuation Methodology Explanation as follows:

> WorkCenter Total Loss was built through a joint partnership between J.D. Power
> and Associates vehicle valuation division Power Information Network (P.I.N.)
> and Mitchell International, a leading provider of claims processing solutions to
> private passenger insurers.

*Id.* at ¶ 1.

**35.**     Additionally, WCTL Valuations specifically bear the names of both J.D. Power

and Mitchell on the first page of each report.

**36.**     Each WCTL Valuation contains a Vehicle Valuation Methodology Explanation,

which is located on the last page of each WCTL Valuation.  A true and correct copy of the

WCTL Vehicle Valuation Methodology Explanation is attached and incorporated herein as

Exhibit A.

**The WCTL Methodology**

37.     WCTL provides total loss valuations automatically based on purported

comparable vehicle data contained in its computer system and loss vehicle data provided to it by

Progressive inspectors called Manage Repair Representatives ("MRR"), through a computer

interface.

8

38.     The WCTL Valuation methodology assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA.

39.     The WCTL Valuation Methodology is explained in Exhibit A as a five step process used to "produce accurate and easy-to-understand vehicle valuations."

40.     This five step process includes:

Step 1 – Locate Comparable Vehicles

Step 2 – Adjust Comparable Vehicles

Step 3 – Calculate Base Vehicle Value

Step 4 – Calculate Loss Vehicle Adjustments

Step 5 – Calculate the Market Value

Exhibit A.

41.     None of these "steps" relating to comparable vehicles, calculating base values or making condition adjustments (step 4) are based on statistically valid methodologies, algorithms, values or computations. Each step is, in fact, statistically invalid and does not result in a proper valuation for total loss vehicles in Florida.

42.     Specifically, the WCTL methodology for identifying "comparable" vehicles and for making purported "equating" adjustment for equipment, options and mileage are statistically invalid.

43.     In addition, the methodology for making downward condition adjustments, which is a major aspect of the fraudulent scheme to under-value, total losses, is completely invalid.

44.     The dollar amounts assigned to condition adjustments in the WCTL Valuations are wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data.

Accordingly, all such downward condition deductions are improper in all respects and should be disregarded in valuing a Progressive insured's total loss vehicle.

45.    The intended and wrongful result of the five steps and sub-steps is that total loss vehicles are undervalued, and Progressive insureds' total loss claims are underpaid.  This underpayment is a detriment to Progressive insureds, including Plaintiffs, and a benefit to Defendants and Progressive.  Rather than paying Plaintiffs and Class Members the proper sum of money for their total loss vehicles, Progressive has retained significant funds in the millions of dollars by underpaying Plaintiffs and Class Members for the value of their total loss vehicles.

46.    As explained above, the Progressive policies, as subject to Florida's Total Loss Statute, require the payment of retail replacement value for comparable automobiles. By contrast, the WCTL Reports routinely provide Progressive total loss vehicle values which are *not intended* to yield retail value for comparable vehicles, but are calculated to yield a substantially lesser amount.

47.    The Market Values in the WCTL Valuations are known by Progressive to be regularly, materially and substantially lower than the retail values for comparable vehicles, and to deny insureds, such as Plaintiffs and the Class, an actual retail value amount sufficient for its insureds to purchase a comparable replacement vehicle.

48.    The substantial majority of Progressive's first-party total loss claims in Florida are settled on the basis of the WCTL Valuations.

### Progressive's Use of the Unlawful WCTL Valuations

49.    Progressive contracted with Mitchell to receive the WCTL Reports

50.    J.D. Power and Mitchell provided Progressive with WCTL Valuations for the total loss vehicles of the Plaintiffs and the Class.

10

51.     Progressive actually utilizes the WCTL Reports to establish purported market and settlement values for total loss vehicles in Florida.

52.     The Market Values identified in the WCTL Reports for Plaintiffs' vehicles constitute a significant underpayment of Plaintiffs' total loss claims, and a breach of Progressive's obligation under Plaintiffs' Policies and Florida Total Loss Statute to pay an amount of money sufficient for Plaintiffs to purchase comparable replacement vehicles.

53.     Progressive has actual knowledge that WCTL Reports are statistically invalid and unlawful.

54.     Progressive has suppressed and concealed material facts relating to Mitchell's improper WCTL Valuation system and its pre-existing scheme in conspiracy with J.D. Power and Mitchell to intentionally undervalue automobile property claims, including those of the Plaintiffs' and the Class. Specifically, Progressive concealed from Plaintiffs that its purported total loss valuations were based upon the statistically invalid and unlawful WCTL Valuation methodology.

55.     Progressive has knowingly and intentionally acted in bad faith towards its Florida insureds.

### Prior Litigation and Plausibility

56.     Plaintiffs' allegations regarding the invalidity of the WCTL Valuation methodology are plausible. In a related case filed in the U.S. District Court for the Eastern District of Oklahoma, *Hamon v. Farmers Insurance Company, Inc., et al.*, Case No. 6:14-CV-00161-SPS, the Court previously denied motions filed by J.D. Power and Mitchell to dismiss the *Hamon* Third Amended Complaint which asserted the same substantive allegations.

57.     The invalidity of the WCTL Valuations and its methodology have been the subject of discovery and detailed expert affidavits in the *Hamon* action, at least some of which may be subject to a protective order. That *Hamon* discovery and the *Hamon* expert affidavits regarding the invalidity of WCTL Valuations are subject to a Protective Order. Plaintiffs and the Class properly could make more detailed allegations regarding the invalidity of the methodology including, specifically, but not exclusively, selection of "comparable" vehicles, "projected sold adjustments," and "condition adjustments" without violating the Protective Order in that action. Indeed, the Third Amended Complaint in the *Hamon* action included such allegations.

58.     However, out of an abundance of caution given the *Hamon* Protective Order, Plaintiffs and the Class intentionally limit the facts regarding the statistical invalidity of the WCTL Valuation methodology. Nonetheless, the publicly available information from that case, including expert affidavits, confirms that J.D. Power and Mitchell are fully on notice of the claims and issues relating to WCTL Valuations based on the *Hamon* action and *Hamon* expert affidavits.

59.     Likewise, Progressive is on notice of alleged deficiencies in the WCTL Valuation methodology as a result of proceedings in a case styled *Slade v. Progressive Security Insurance Co.*, W.D. La., Case No. 6:11-cv-02164. In *Slade*, Progressive specifically represented that the WCTL Valuation methodology utilizes data from a third-party auto auction company named Manheim when determining the dollar amounts of condition adjustments for total loss vehicles. *Id.* (Doc. 166, pp. 4-6).

## THE NAMED PLAINTIFFS' PROGRESSIVE POLICIES

### Plaintiff Jeremy Richardson

60.     Plaintiff Jeremy Richardson was the owner and insured of a 2009 GMC Yukon SLT2 sport utility vehicle.

61.     The Manheim data provides no proper basis for determining the dollar amount of the downward condition adjustment in WCTL Reports.

62.     Plaintiff Richardson obtained automobile liability insurance coverage, including collision, for his GMC Yukon, from Defendant, Progressive Select Insurance Company, under Policy Number 75743042.

63.     On January 3, 2017, following an automobile accident with another vehicle operated by a third party, Progressive determined that Plaintiff Richardson's vehicle was a "total loss" under claim number 17-4200277-01.

64.     The terms of Progressive's Florida auto policy with Plaintiff Richardson are not individualized, unique or specific to Richardson.  Plaintiff Richardson's auto policy is the same standard form Florida auto policy that Progressive uses for all of its Florida insureds with comprehensive coverage.

65.     J.D. Power and Mitchell provided Progressive with a WCTL Valuation for Plaintiff Richardson's vehicle.  A true and correct copy of Plaintiff Richardson's WCTL Vehicle Valuation Report is attached hereto and incorporated herein as Exhibit B.

66.     Plaintiff Richardson's WCTL Valuation purports to state a "Base Value" for his GMC Yukon in the amount of $17,257.06, and a "Market Value" of $15,931.18 after a negative condition adjustment in the amount of $1,455.88 and a positive "After Market Parts" adjustment in the amount of $130.00, before applying his deductible in the amount of $250.00.  Plaintiff

13

Richardson's WCTL Valuation deprived him of approximately $1,455.06, based upon the statistically invalid downward condition adjustment.

## Plaintiff Mandy Larson

67.     Plaintiff Mandy Larson was the owner and insured of a 2003 Toyota Tundra Limited truck.   Plaintiff Larson obtained automobile liability insurance coverage, including collision, for her Toyota Tundra, from Defendant, Progressive American Insurance Company, under Policy Number 911264203.  On October 6, 2017, following an automobile accident with another vehicle operated by a third party, Progressive determined that Plaintiff Larson's vehicle was a "total loss" under claim number 17-2154271-01.

68.     The terms of Progressive's Florida auto policy with Plaintiff Larson are not individualized, unique or specific to Larson.  Plaintiff Larson's auto policy is the same standard form Florida auto policy that Progressive uses for all of its Florida insureds with comprehensive coverage.

69.     J.D. Power and Mitchell provided Progressive with a WCTL Valuation for Plaintiff Larson's vehicle.   A true and correct copy of Plaintiff Larson's WCTL Vehicle Valuation Report is attached hereto and incorporated herein as Exhibit C.

70.     Plaintiff Larson's WCTL Valuation purports to state a "Base Value" for her Toyota Tundra in the amount of $8,290.49, and a "Market Value" of $7,793.10 after a negative condition adjustment in the amount of $667.39 and a positive "After Market Parts" adjustment in the amount of $170.00, before applying her deductible in the amount of $500.00.  Plaintiff Larson's WCTL Valuation deprived her of approximately $667.39, based upon the statistically invalid downward condition adjustment.

14

## CLASS REPRESENTATION ALLEGATIONS

71.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 1.220 of the Federal Rules of Civil Procedure. The Class consists of:

> All persons and entities that have made first-party claims since October 1, 2012 under an automobile insurance policy issued within the state of Florida by Progressive whose vehicles were declared a total loss by Progressive and were valued using J.D. Power and Mitchell's WCTL system.

72.     Plaintiffs exclude from the Class Progressive, J.D. Power, Mitchell, all related entities, subsidiaries or affiliates of said Defendants, any entity in which said Defendants have a controlling interest, and any and all of said Defendants' employees, affiliates, legal representatives, heirs, successors, or assignees.

73.     Plaintiffs also exclude from the Class any person or entity that has previously commenced and resolved a lawsuit against said Defendants arising out of the subject matter of this lawsuit.

74.     Plaintiffs also exclude from the Class the Judge assigned to this case and any member of the Judge's immediate family.

75.     **The Condition Adjustment Subclass:** This Subclass consists of Florida insureds whose total loss claims were reduced by negative or downward condition adjustments.

76.     **The Market Value Subclass:** This Subclass consists of all Florida insureds whose vehicles received Market Values and Settlement Amounts as determined by WCTL Valuations which were less than the actual Retail Values for each vehicle as required by Florida Statute 626.9743(5)(a)(2)(b), as determined by Guidebooks.

77.     **Numerosity:** Both Subclasses are numerous that joinder of all affected persons would be impracticable. Although the exact number of Subclass members is unknown, the

Florida Subclasses are estimated to comprise many thousands of people who have sustained total losses to their vehicles while insured by Progressive.

78.     **Commonality:** Numerous questions of law and fact are common to Plaintiffs and the Class, and predominate over any individual questions. These legal and factual questions include, but are not limited to:

> a.  Whether Progressive failed to properly investigate and determine that WCTL Valuations are statistically invalid;
>
> b.  Whether Progressive has actual knowledge that WCTL Valuations are statistically invalid;
>
> c.  Whether Florida law required Progressive to pay actual cash value to its Florida insureds;
>
> d.  Whether Progressive's Florida Policy required it to pay actual cash value to its Florida insureds;
>
> e.  Whether Progressive breached its contracts of insurance with its Florida insureds by improperly underpaying total loss claims through the use of statistically invalid J.D. Power/Mitchell valuations;
>
> f.  Whether Progressive failed to pay actual cash value to its Florida insureds;
>
> g.  Whether WCTL Valuations represent the actual cash value of the vehicles at the time of the loss;
>
> h.  Whether Progressive has intentionally and systemically underpaid total loss claims to Plaintiffs and the Class by using statistically invalid WCTL Valuations;
>
> i.  Whether Plaintiffs and the Class have sustained damages;
>
> j.  Whether Defendants have been unjustly enriched as a result of the scheme described herein; and,
>
> k.  Whether Progressive, J.D. Power and Mitchell have conspired, as alleged herein.

79.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class Members, as Plaintiffs and all members of the Class have suffered damages as a result of Defendants'

unlawful and deceptive scheme of settling total loss vehicle claims for substantially less than the actual replacement costs of such vehicles. Specifically, the total loss claims of the Class Members were adjusted by Progressive based upon WCTL Valuations. The same discovery and evidence that would be used to support Plaintiffs' claims will be used to support the claims of the Members of the Class.

80. **Adequacy of Representation:** Plaintiffs will fully and adequately represent and protect the interests of the Class Members because they share common injuries as a result of the Defendants' conduct that is applicable to all Members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests that are contrary to or in conflict with those of the Class they seek to represent.

81. **Predominance and Superiority:** This action is properly maintained as a class action pursuant to Rule 1.220(b)(3) because questions of law and fact common to Plaintiffs' claims and the claims of the Members of the Class predominate over questions of law and fact affecting only individual Members of the Class, such that a class action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to Plaintiffs' claims are similar to the issues relating to the claims of the other Members of the Class, such that a class action provides a far more efficient vehicle to resolve the claims rather than a myriad of separate lawsuits. Accordingly, for most Class Members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights. Certification of the Class under Rule 1.220(b)(3) is also supported by the following considerations:

17

a. The relatively small amount of damages that Members of the Class have suffered on an individual basis would not justify the prosecution of separate lawsuits; and

b. Counsel in this class action are not aware of any other earlier litigation against Defendants to which any other Members of the Class are a party and in which any question of law or fact controverted in the subject action is to be adjudicated.

c. By virtue of Defendants' efforts to conceal their scheme, many Class Members may not even be aware that they have a claim.

d. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action.

e. Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of Class Member claims.

f. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action.

A. **Damages Calculations for the Subclasses**

82. Calculation of damages for the Condition Adjustment Subclass is readily manageable. Progressive maintains specific information in its electronic database relating to first-party total loss claims identifying each claim in the amount of any negative or downward condition adjustment on each such claim.

83. In addition, Progressive maintains aggregate data on the total amount of negative or downward condition adjustments in Florida (and other states) on an annual basis.

84. Accordingly, when the Condition Adjustment Subclass establishes that all of the Progressive negative or downward condition adjustments are statistically invalid, then each member of the Condition Adjustment Subclass will be entitled to a refund in the full amount of any such condition adjustment. As stated, that amount can be readily determined on an individual basis for each Progressive first-party insured as well as on an aggregate basis.

85. In a similar matter, the damages recoverable by the Market Valuation Subclass may be readily determined from Progressive's electronic database relating to first-party total loss claims in the State of Florida.

86. When the Market Value Subclass establishes that each of "Steps" of the WCTL Valuation Methodology, including but not limited to, condition adjustments, are invalid, then Progressive becomes obligated to pay the total loss claim of each Market Value Subclass member based upon the Guidebook valuation imbedded in Progressive's electronic database as an alternative valuation for each Subclass Member's total loss vehicle.

87. As in the case of the Condition Adjustment Subclass, such information is readily accessible in Progressive's electronic database, and the proper adjustments for each Member of this Subclass can be readily ascertained and determined from that database on an individual basis.

88. All of the damages claimed in this action on a class-wide basis are readily and easily ascertainable from the Progressive electronic database relating to its Florida total loss claims.

19

89.     Defendants have acted, or refused to act, in a manner that applies generally to the Class, such that final injunctive relief is appropriate as to the Class as a whole.

## Count I – Breach of Contract
### (Against Defendants Progressive American Insurance Company and Progressive Select Insurance Company)

90.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

91.     The Progressive Policies with Plaintiffs constitute valid and binding contracts.

92.     Progressive has breached its Policies with Plaintiffs in multiple ways, resulting in the material underpayment of Plaintiffs' and the Class' total loss claims, which include, but are not limited to: (a) failure to properly investigate and confirm the statistical validity of the WCTL Valuation methodology; (b) improper delegation of its obligation to value total loss vehicles, including the Plaintiffs' vehicles, to Mitchell; and (c) wrongful failure to properly adjust and pay the amount due and owed to the Plaintiffs for their total losses, sufficient for Plaintiffs to obtain comparable replacement vehicles.

93.     Progressive's breach proximately caused Plaintiffs' actual damages and the actual damages of the Class. Thus, Progressive is liable for compensatory, consequential and incidental damages flowing from its breach of the Policies, as well as attorneys' fees and interest.

94.     These breach of contract claims apply to all Class Members.

## Count II – Bad Faith
### (Against Defendants Progressive American Insurance Company and Progressive Select Insurance Company)

95.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

96.     The Policies obligated Progressive to properly and reasonably investigate the fair value of the total losses sustained by each such policyholder, including Plaintiffs, and then pay that amount in a timely manner. The Policies also obligated Progressive to act in good faith and to deal fairly with Plaintiffs in handling and adjusting their total loss claims.

97.     Instead of properly investigating and paying Plaintiffs' total loss claims, Progressive contracted with J.D. Power and Mitchell and utilized the WCTL Valuations for the wrongful and bad faith purpose of intentionally and improperly reducing total loss payments to Plaintiffs and the Class, in an improper attempt to save money at the expense of Progressive insureds, including Plaintiffs and the Class.

98.     Progressive has actual knowledge that WCTL methodology is statistically invalid.

99.     Progressive's conduct in "low balling" Plaintiffs' claims, intentionally undervaluing Plaintiffs' claims, and withholding the full value of those claims, is unreasonable and unjustifiable under the circumstances, and constitutes bad faith under Florida law.

100.    Progressive has acted in bad faith in adjusting Plaintiffs' claims.

101.    Plaintiffs have suffered damages as a direct and proximate result of such unreasonable, bad faith conduct on the part of Progressive and are, therefore, entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees Plaintiffs may be entitled under Florida law.

### Count III – Tortious Interference with Performance of a Contract
### (Against Defendants J.D. Power & Associates and Mitchell International, Inc.)

102.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

21

103.  The Policies obligated Progressive to properly investigate the value of Plaintiffs' total loss claims using a fair and statistically valid valuation system or methodology, and then to properly pay the Plaintiffs the appropriate value of their total losses.

104.  At all times relevant hereto, J.D. Power and Mitchell had knowledge that Progressive entered into such insurance policies with its insureds and that the policies obligated Progressive to promptly and properly pay total loss claims. This knowledge is demonstrated by the fact that J.D. Power and Mitchell prepared the WCTL Valuations, which specifically identified Plaintiffs and specifically valued Plaintiffs' vehicles.

105.  J.D. Power and Mitchell had actual knowledge that Progressive used the WCTL Valuations to adjust the total loss claims of Progressive insureds.

106.  J.D. Power and Mitchell also had actual knowledge that Progressive typically would refuse to increase total loss valuations beyond the WCTL Valuations and that Progressive settled the majority of its total loss claims based upon WCTL Valuations.

107.  J.D. Power and Mitchell wrongfully interfered with Progressive's contractual obligations to Plaintiffs by knowingly and intentionally selling to Progressive a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling Progressive to underpay the claims of total loss insureds, including Plaintiffs.

108.  Progressive's breaches that were caused by Power and Mitchell's unjustified, intentional and malicious interference with Plaintiffs' contractual rights under the Policy include the following: (a) failing to properly value Plaintiffs' total losses; (b) using arbitrary and statistically invalid methodology to value Plaintiffs' total loss claims; and (c) causing Progressive to fail to pay the proper amount due and owed to the Plaintiffs.

22

109.   Plaintiffs suffered damages as a proximate result of J.D. Power and Mitchell's improper WCTL Valuations and resulting tortious interference with the contractual relationship between Progressive and the Plaintiffs and the Class. Therefore, Plaintiffs are entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees to which they may be entitled under Florida law.

### Count IV – Breach of Contract Arising from Plaintiffs' Status as Third-Party Beneficiary of the Agreement Between J.D. Power and Mitchell (Against Defendants J.D. Power & Associates and Mitchell International, Inc.)

110.   Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

111.   At all times relevant hereto, Mitchell, through its joint venture with J.D. Power, contracted to provide Progressive with total loss valuations. The intended purpose of this Agreement was to "outsource" Progressive's valuation of total loss claims for the purpose of satisfying the obligations of Progressive to value and pay total loss claims.

112.   As insureds for whom valuations were prepared under this Agreement, Plaintiffs and the Class are intended beneficiaries of the Agreement between Progressive and Mitchell, and are entitled to sue for breach of that Agreement.

113.   Plaintiffs allege that J.D. Power and Mitchell breached this Agreement by providing Progressive with total loss valuations that were not statistically valid and were wholly arbitrary in the manner in which Progressive valued total losses, including Plaintiffs' total losses. The improper WCTL Valuations were supplied to Progressive by Mitchell in the course of business for the purported direct benefit of Plaintiffs and the Class.

114.   Mitchell's breach of its Agreement to provide valid total loss valuations to Progressive proximately caused damage to Plaintiffs. Mitchell is, therefore, liable to Plaintiffs

23

and the Class as intended third party beneficiaries for compensatory and consequential damages flowing from said breaches.

115.   J.D. Power is likewise liable for Mitchell's breach of its Agreement with Progressive based upon its actual involvement with the WCTL Valuation methodology and its partnership with Mitchell.

## Count V – Civil Conspiracy
**(Against Defendants Progressive, J.D. Power & Associates and Mitchell International, Inc.)**

116.   Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

117.   J.D. Power, Mitchell and Progressive entered into an illicit agreement and conspiracy to utilize WCTL Valuations to provide improper total loss valuations. Specifically, Progressive and Mitchell conspired to underpay Plaintiffs and the Class by using WCTL Valuations, which included the aforementioned statistically invalid Five Steps (and sub-steps), which were not intended to calculate the fair value of total loss vehicles, but rather to improperly undervalue total loss claims of Progressive insureds.

118.   J.D. Power is a part of the conspiracy by reason of its partnership with Mitchell and its participation with Mitchell in building the WCTL Valuations for use by Progressive and other insurers.  Mitchell's role in the conspiracy is evidenced by its Agreement with Progressive and its partnership with J.D. Power.

119.   Progressive is a part of the conspiracy by reason of having actual knowledge that the WCTL Valuations provided through its partnership with J.D. Power and Mitchell were statically invalid and continuing to utilize the WCTL Valuations when determining the payment of Plaintiffs' and Class Members' total loss claims.

24

120.     Progressive's conspiracy with Power and Mitchell to use invalid WCTL Valuation methodology deprived Plaintiffs and the Class of the proper value of their total losses. The overt acts emanating from Defendants' illicit agreement to so deprive Plaintiffs and the Class include, but are not limited to, J.D. Power and Mitchell's undervaluation of Plaintiffs' claims using WCTL Valuations, and Progressive's failure to properly investigate, adjust and pay such claims directly resulting from the WCTL Valuations.

121.     Plaintiffs have been damaged as a proximate result of Defendants' illicit agreement and conspiracy. Therefore, J.D. Power, Mitchell and Progressive are each liable for the torts of one another arising out of their conspiracy as defined herein, and Plaintiffs are entitled to recover compensatory and punitive damages against Progressive, J.D. Power and Mitchell.

**Prayer for Relief**

**WHEREFORE,** Plaintiffs, Jeremy Richardson and Mandy Larson, respectfully request that this Honorable Court, for themselves and all Class Members:

A.     Certify the Class alleged herein;

B.     Appoint Plaintiffs as Class Representatives;

C.     Appoint the undersigned as Class Counsel;

D.     Award Plaintiffs and Class Members actual damages in such amount as the Court or Jury may determine;

E.     Award declaratory and injunctive relief as permitted by law;

F.     Award punitive damages as permitted by law;

G.     Award reasonable attorneys' fees, filing fees, expert fees, litigation costs and expenses to counsel based upon the benefit received by Plaintiffs and the Class; and

25

H.    Award Plaintiffs and Class Members any additional relief as this Court deems just and proper, including injunctive relief to prohibit Progressive from continuing to utilize WCTL Valuations in Florida.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all counts for which a trial by jury is permitted by law.

Dated: September 24, 2018

Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

*/s/ John A. Yanchunis*
Jonathan B. Cohen (FL Bar No. 0027620)
John A. Yanchunis (FL Bar No. 324681)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jcohen@forthepeople.com
jyanchunis@forthepeople.com

**WALLER LAW OFFICE, PC**
Jonathan H. Waller (AL Bar No. WAL073)*
2001 Park Place, Suite 900
Birmingham, AL 35203
Telephone: (205) 313-7330
jwaller@waller-law.com

*Attorneys for Plaintiffs*

* *Pending pro hac vice admission*