UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEREMY RICHARDSON and MANDY
LARSON, on behalf of
themselves and all others
similarly situated,

        Plaintiffs,

v.                     Case No:  2:18-cv-715-FtM-99MRM

PROGRESSIVE        AMERICAN
INSURANCE          COMPANY,
PROGRESSIVE SELECT INSURANCE
COMPANY, J.D.  POWER  &
ASSOCIATES,  and  MITCHELL
INTERNATIONAL, INC.,

        Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on the Progressive
Defendants' Motion to Dismiss the Class Action Complaint (Doc.
#29) and Defendants Mitchell International, Inc. and J.D. Power's
Motion to Dismiss, both filed on December 19, 2018.  Plaintiffs
filed Amended Responses (Docs. ##51, 51) and defendants filed
Amended Replies (Doc. ##53, 54).  For the reasons set forth below,
the Progressive Defendants' Motion is granted in part and denied
in part and Mitchell and J.D. Power's Motion is denied.

**I.**

    Progressive-Insureds Jeremy Richardson and Mandy Larson were
involved in motor vehicle accidents that rendered their vehicles

total losses. This purported class action challenges the methodology for valuation of total loss claims by Progressive American Insurance Company and Progressive Select Insurance Company's (collectively "Progressive"). Plaintiffs allege the methodology violates the Claims Settlement Practices section of the Florida Unfair Insurance Trade Practices Act (UITPA), contained in the Florida Insurance Code (referred to in the Complaint as "Florida's Total Loss Statute.") Defendants J.D. Power & Associates and Mitchell International, Inc., who provide total loss valuation reports known as Work Center Total Loss (WCTL) Reports to Progressive, are alleged co-conspirators in the scheme to artificially deflate the value of total loss claims.[1]

Originally filed in state court before removal based on the Class Action Fairness Act (Doc. #1), the Complaint (Doc. #26) alleges claims for breach of contract and bad faith against Progressive (Counts I, II)[2], tortious interference with performance of contract and breach of contract against J.D. Power and Mitchell

---

[1] Richardson alleges his WCTL Valuation employed statistically invalid downward condition adjustments and deprived him of approximately $1,455.06 on his total loss claim. (Doc. #26, ¶ 66.) Larson alleges her WCTL Valuation employed statistically invalid downward condition adjustments and deprived her of approximately $667.39 on her total loss claim. (Doc. #26, ¶ 70.)

[2] Plaintiffs do not oppose defendants' request for dismissal of Count II (Doc. #51, n.1); therefore, the Court will dismiss Count II without prejudice.

(Count III, IV), and civil conspiracy against all defendants (Count V). Defendants move to dismiss for failure to state any claims. The Court will first outline the facts as allege in the Complaint (Doc. #26).

**II.**

**A. Plaintiffs' Insurance Policies**

Plaintiffs' insurance policies provide that Progressive agreed to "pay for sudden, direct, and accidental loss" to a covered vehicle.[3] (Docs. ##29-1, 29-2, p. 23.) Under the terms of Progressive's standard policy (the Policy) when an insured's vehicle is deemed a total loss, Progressive is required to pay an amount of money sufficient for the insured to purchase a comparable replacement vehicle. (Doc. #26, ¶ 18.) The Policy provides that Progressive will pay an insured the "actual value" of the total loss vehicle. (Id., ¶ 21.) The Policy further provides that "[t]he actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs," and that Progressive "may use estimating, appraisal, or injury

---

[3] A copy of the Policy was not attached to the Complaint, but plaintiffs allege that the standard policy (held by both plaintiffs) is the same standard form Florida auto policy that Progressive uses for all of its Florida insureds with comprehensive coverage. (Doc. #26, ¶¶ 64, 68.) Progressive attached copies of the plaintiff's insurance policies to its Motion to Dismiss (Docs. ##29-1, 29-2.) The Court may consider the copy of plaintiffs' policies because they are central to plaintiffs' claims and are undisputed. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

evaluation systems to assist [them] in adjusting claims under this policy and to assist [them] in determining the amount of damages, expenses, or loss payable under this policy." (Doc. #29-1, pp. 29, 34.) The Policy states that its terms conform to Florida statutes. (Id., p. 35.)

**B. Florida's Total Loss Statute**

Section 5 of Florida's Total Loss Statute provides alternative methods for determining the "actual cost to purchase a comparable vehicle":

> **626.9743. Claim Settlement Practices Relating to Motor Vehicle Insurance**
>
> **\* \* \***
>
> **(5)** When the insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the following methods:
>
> > **(a)** The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9). Such cost may be derived from:
> >
> > > **1.** When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days;
> > >
> > > **2.** The retail cost as determined from a generally recognized used motor vehicle industry source such as:

- 4 -

**a.** An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or

**b.** A guidebook that is generally available to the general public[4] if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or

**3.** The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area.

**(b)** The insurer may elect to offer a replacement motor vehicle that is a specified comparable motor vehicle available to the insured, including sales tax if applicable pursuant to subsection (9), paid for by the insurer at no cost other than any deductible provided in the policy and betterment as provided in subsection (6). The offer must be documented in the insurer's claim file. For purposes of this subsection, a comparable motor vehicle is one that is made by the same manufacturer, of the same or newer model year, and of similar body type and that has similar options and mileage as the insured vehicle. Additionally, a comparable motor vehicle must be in as good or better overall condition than the insured vehicle and available for inspection within a reasonable distance of the insured's residence.

**(c)** When a motor vehicle total loss is adjusted or settled on a basis that varies from the methods described in paragraph (a) or paragraph (b), the determination of value must

---

[4] Plaintiffs allege examples of such public guidebooks include the NADA, Kelley Blue Book, or the Black Book guides. (Doc. #26, ¶ 26.)

be supported by documentation, and any
deductions from value must be itemized and
specified in appropriate dollar amounts. The
basis for such settlement shall be explained
to the claimant in writing, if requested, and
a copy of the explanation shall be retained in
the insurer's claim file.

**(d)** Any other method agreed to by the claimant.

Fla. Stat. § 626.9743(5). Plaintiffs allege that Section
(5)(a)(2)(b) governs this action and Progressive's claims
adjustment practices do not comply with this section, breaching
the Policy. (Doc. #26, ¶¶ 30, 32.)

**C. The Mitchell and J.D. Power Partnership**

Mitchell and J.D. Power entered into a joint partnership to
provide WCTL Vehicle Valuation Reports to insurers, including
Progressive.[5] (Doc. #26, ¶ 33.) Plaintiffs allege that WCTL
Vehicle Valuation Reports, utilized by Progressive to establish
purported market and settlement values for total loss vehicles in
Florida, include values based on improper and unlawful
methodologies.[6] (Id., ¶¶ 33, 51.) The partnership between

---

[5] Plaintiffs allege that Progressive contracted with Mitchell
to receive the WCTL Reports and had actual knowledge of the
problems with the WCTL reports. (Doc. #26, ¶¶ 49, 53.)
Progressive suppressed and concealed from plaintiffs that its
purported loss valuations were based upon statistically invalid
and unlawful WCTL Valuation methodology in order to intentionally
undervalue automobile claims. (Id., ¶ 54.)

[6] Plaintiffs' Vehicle Valuation Reports are attached to the
Complaint as Exhibits B (Plaintiff Richardson) and C (Plaintiff
Larson). (Docs. ##26-2, 26-3.)

Mitchell and J.D. Power is described in the first paragraph of the "Vehicle Valuation Methodology Explanation," which is on the last page of the Vehicle Valuation Reports:

> Work Center Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

(Docs. ##26-1, 26-2, 26-3.)

**D. Plaintiffs' Description of the WCTL Methodology**

WCTL provides total loss valuations automatically based on purported comparable vehicle data contained in its computer system and loss vehicle data provided to it by Progressive inspectors called Manage Repair Representatives (MRR) through a computer interface. (Doc. #26, ¶ 37.) Plaintiffs allege that WCTL Valuation methodology assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA. (Id., ¶ 38.)

The WCTL Valuation Methodology five-step process that is used to "produce accurate and easy-to-understand vehicle valuations" is explained on the last page of the Vehicle Valuation Reports. (Docs. ##26-1, 26-2, 26-3.) Plaintiffs allege that each step is statistically invalid and does not result in a proper valuation for total loss vehicles. (Doc. #26, ¶ 41.) Specifically, the WCTL methodology for identifying "comparable" vehicles and for

making purported "equating" adjustments for equipment, options, and mileage, are statistically invalid. (Id., ¶ 42.) In addition, the methodology for making downward condition adjustments is arbitrary and not based on any statistical, objective, valid, or verifiable data. (Id., ¶¶ 43-44.) And the WCTL Reports routinely provide Progressive total loss vehicle values which are *not intended* to yield retail value for comparable vehicles but are calculated to yield a substantially lesser amount. (Id., ¶ 46) (emphasis in original).

The intended and wrongful result of the five steps is that total loss vehicles are undervalued, and Progressive insureds' total loss claims are underpaid. (Doc. #26, ¶ 43.) Thus, Progressive has made a windfall amounting to millions of dollars by underpaying plaintiffs and class members for the value of their total loss vehicles. (Id., ¶ 45.)

### III.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

above the speculative level." Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## IV. Claims Against Progressive

### A. Breach of Contract (Count I)

Count I alleges that Progressive breached the Policy in "multiple ways" including, but not limited to[7]: (1) failure to properly investigate and confirm the statistical validity of the WCTL Valuation methodology; (2) improper delegation of its obligation to value total loss vehicles, including plaintiffs' vehicles, to Mitchell; and (3) wrongful failure to properly adjust and pay the amount due and owed to plaintiffs for their total losses, sufficient for plaintiffs to obtain comparable replacement vehicles. (Doc. #26, ¶ 92.)

A claim for breach of contract under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages. Havens v. Coast Fla., P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013). Progressive asserts that the allegations regarding the breach are inadequate and cannot proceed on the bare allegation that Progressive undervalued their total loss vehicles. Progressive also argues that a private right of action is not allowed under Florida's Total Loss Statute.

---

[7] When deciding a Motion to Dismiss for failure to state a claim, the Court will only consider the well-pled factual allegations in the Complaint. Thus, the Court is indeed limited to the three ways described.

## 1. Sufficiency of Factual Allegations

First, Progressive argues that Count I fails because plaintiffs have not identified a contractual provision that defendants violated. The Court agrees in part. The Policy does not require that Progressive investigate the amount of loss with any particular methodology, only that the methodology that Progressive utilizes be performed properly and in accordance with Florida law. <u>See</u> Doc. #29-1, p. 35 ("If any provision of this policy fails to conform to the statutes of the state listed on your application as your residence, the provision shall be deemed amended to conform to such statutes."). Since Progressive elected to perform the total loss valuation using WCTL, that methodology must be properly conducted.

Second, Progressive argues that plaintiffs' allegation that Progressive improperly delegated its obligation to value total loss vehicles to Mitchell fails to state a claim. The Court agrees. The Policy specifically states that Progressive "may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this Policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology." (Doc. #29-1, p. 34.)

Third, Progressive argues that plaintiffs do not allege that Progressive underpaid plaintiffs' claims. The Court disagrees. Plaintiffs allege that they were underpaid for their total loss vehicles (Doc. #26, ¶ 52), which if true, would constitute breach of contract.

Thus, the Court finds the factual allegations sufficient to state a plausible claim for parts of the breach of contract claim. However, the Court will dismiss the delegation claim from Count I.

### 2. Disguised Claim for Violation of Florida's Claims Settlement Statute

Progressive next argues that plaintiffs may not pursue a breach of contract claim disguised as a private right of action for violation of the Claims Settlement Statute (referred to in the Complaint as the "Total Loss Statute"). Plaintiffs respond that they specifically state in their Complaint that they are not seeking a private right of action under the UITPA (Doc. #26, ¶ 31); instead, plaintiffs are bringing a breach of contract claim for Progressive's breach of their Policy (which incorporates Florida law) in determining the value of their total loss.

The Claims Settlement Statute is a subsection of the Florida Unfair Insurance Trade Practices Act, which is codified at Florida Statutes § 626.951, et seq. The Florida legislature created a private right of action for certain UITPA violations but not others. See Fla. Stat 624.155(1)(a) (providing that "[a]ny person

may bring a civil action against an insurer when such person is damaged . . . by a violation of any of the following provisions"). Relevant here, the Claims Settlement Statute is not one of the UITPA violations for which the Florida legislature elected to provide a private right of action. However, this does not preclude plaintiffs' claim.

Here, plaintiffs bring a common law cause of action for breach of the underlying insurance contract premised on defendants' failure to comply with the UITPA, which provisions are incorporated into the insurance contract. See e.g., Doc. #26, ¶ 24; ¶¶ 30, 31, 32, 52. The Policy, by its express terms, states that "[i]f any provision of this policy fails to conform to the statues of the state listed on your application as your residence [here, Florida], the provision shall be deemed amended to conform to such statutes." (Doc. #29-1, p. 35.) Plaintiffs are not bringing a private right of action to enforce the Claims Settlement Statutes, but instead are asserting a claim based on breach of certain Policy provisions that the parties agreed would conform to all applicable Florida statutes.[8] Therefore, the Motion to Dismiss Count I on this basis is denied.

---

[8] Progressive also argues that plaintiffs misinterpret the Claims Settlement statute and that Progressive's use of WCTL complies with the statute. These arguments rely on disputed issues of fact that are more appropriately addressed at summary judgment.

**B. Claim for Declaratory and Injunctive Relief**

Progressive also argues that plaintiffs are not entitled to injunctive or declaratory relief because plaintiffs have an adequate legal remedy and seek monetary relief. This argument fails as plaintiffs may present inconsistent claims in the Complaint. See Fed. R. Civ. P. 8(d)(3).

**C. Allegations Regarding Prior Lawsuits**

Plaintiffs' Complaint includes a section titled "Prior Litigation and Plausibility" wherein plaintiffs detail prior litigation against defendants involving the WCTL methodology. (Doc. #26, ¶¶ 56-59.). Progressive moves to strike this section because the allegations are improper and irrelevant. Progressive argues that these cases were not filed in Florida nor asserted claims under Florida law, and one case did not involve Progressive. Plaintiffs respond that they included the prior litigation section to demonstrate that other courts have found similar complaints to be plausible and to show that defendants are on notice that their conduct was illegal and actionable.

The Court agrees that the section should be stricken. The Court fails to see how these allegations tie into plaintiffs' case and the harm they allegedly suffered, and plaintiffs make no plausible allegations to support such a connection. See Weiland v. Palm Beach Cnty. Sheriff's Ofc., 792 F.3d 1313, 1321-22 (11th Cir. 2015) (a shotgun pleading is "replete with conclusory, vague,

and immaterial facts not obviously connected to any particular cause of action"). Therefore, the Court will strike paragraphs 56-59 from the Complaint.

### V. Claims Against J.D. Power and Mitchell

#### A. Tortious Interference with Contract (Count III)

In Count III, plaintiffs allege that J.D. Power and Mitchell wrongfully interfered with Progressive's contractual obligations to plaintiffs by knowingly and intentionally selling to Progressive a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling Progressive to underpay the claims of total loss insureds, including plaintiffs. (Doc. #26, ¶ 107.)

Under Florida law, the elements of a cause of action for tortious interference with a contractual relationship are: (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, and (5) damages resulting from the breach. Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290 (11th Cir. 1998) (citing Florida Tel. Corp. v. Essig, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)).

J.D. Power and Mitchell raise three arguments in support of dismissal: (1) plaintiffs fail to plausibly allege that J.D. Power or Mitchell had knowledge of plaintiffs' contracts with

Progressive; (2) plaintiffs fail to plausibly allege that J.D. Power or Mitchell intentionally induced Progressive to breach its contracts with plaintiffs; and (3) plaintiffs fail to meet the heightened particularity of Rule 9(b).

Defendants' first two arguments can be easily disposed of as plaintiffs expressly allege that J.D. Power and Mitchell had knowledge that Progressive entered into insurance policies with its insureds and that defendants acted intentionally. (Doc. #26, ¶¶ 104-05, 108.) Plaintiffs need not plead defendants' knowledge of the relevant contracts and intent with specificity, even assuming Rule 9(b) applies. See Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC, 904 F.3d 1197, 1215-16 (11th Cir. 2018); Fed. R. Civ. P. 9(b) ("In alleging fraud . . . intent [and] knowledge . . . may be alleged generally.")).

With regard to defendants' third argument, defendants assert that Rule 9(b) heightened pleading requirements applies to Count III because plaintiffs allege that "Progressive has suppressed and concealed material facts relating to improper WCTL Valuation system and its pre-exiting scheme in conspiracy with J.D. Power and Mitchell to intentionally undervalue automobile insurance property claims, including those of plaintiffs' and the class" and "the methodology for making downward condition adjustments, which is a major aspect of the fraudulent scheme to under-value total

losses, is completely invalid." (Doc. #26, ¶¶ 43, 54.)[9]  However,
Rule 9(b) is not applicable here because plaintiffs' claim for
tortious interference does not sound in fraud, and even if it did
apply, plaintiffs' allegations suffice to comply the heightened
pleading standard.  Therefore, the Motion to Dismiss Count III is
denied.

## B. Breach of Contract Arising from Plaintiffs' Status as Third-Party Beneficiaries (Count IV)

Count IV alleges breach of Mitchell and J.D. Power's contract
to provide Progressive with total loss valuations.  Mitchell,
through its joint venture with J.D. Power, contracted to provide
Progressive with total loss valuations and the intended purpose of
the agreement was to outsource Progressive's valuation of total
loss claims.  (Doc. #26, ¶ 111.)  Plaintiffs allege that as
insureds for whom valuations were prepared, plaintiffs and the
Class are intended beneficiaries of the agreement between
defendants who are entitled to sue for breach.  (Id., ¶ 112.)

A person who is not a party to a contract may not enforce its
terms even where that person receives an incidental or
consequential benefit from the contract.  Esposito v. True Color
Enters. Constr., Inc., 45 So. 3d 554, 555 (Fla. 4th DCA 2010).  An
intended third-party beneficiary may, however, enforce a contract.

---

[9] Paragraph 54 is incorporated by reference into Count III.

The pleading requirements for a breach of contract claim by a third-party beneficiary are well established.

> A cause of action for breach of contract brought by a third party beneficiary must include the following allegations: 1) the existence of a contract, 2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party, 3) breach of the contract by a contracting party, and 4) damages to the third-party resulting from the breach. Jenne v. Church & Tower, Inc., 814 So. 2d 522, 524 (Fla. 4th DCA 2002); Jacobson v. Heritage Quality Constr. Co., 604 So. 2d 17 (Fla. 4th DCA 1992), review dismissed, 613 So. 2d 5 (Fla. 1993). A non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs. Aetna Cas. & Sur. Co. v. Jelac Corp., 505 So. 2d 37 (Fla. 4th DCA 1987); Security Mut. Cas. Co. v. Pacura, 402 So. 2d 1266 (Fla. 3d DCA 1981). To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party. Clark & Co. v. Department of Ins., 436 So. 2d 1013, 1016 (Fla. 1st DCA 1983).

Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So. 2d 251, 254 (Fla. 3d DCA 2005). The focus here is on the second element – the intent of the contracting parties – which J.D. Power and Mitchell argue plaintiffs have failed to plausibly allege.

As noted above, a non-party to a contract is an intended beneficiary only if the contract clearly expressed an intent to primarily and directly benefit the third party or class of persons to which that party belongs. Here, the Court does not have a copy of the agreement between Progressive, J.D. Power, and Mitchell,

and therefore cannot make any assumptions as to the intent of the contracting parties.  Therefore, the Motion to Dismiss Count IV is denied.

**VI. Civil Conspiracy Claim Against All Defendants (Count V)**

"A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008) (citations omitted).  "The basis for the conspiracy must be an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990) (citation omitted); see also Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1089 (11th Cir. 2004) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage.").

Here, plaintiffs state that the basis for the conspiracy claim is the tortious interference with contract claim.  (Doc. #26, ¶¶ 117, 120.)  Under Florida law, a claim for civil conspiracy can be based on a party's tortious interference with contract. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1372 (M.D. Fla. 2007) (applying Florida law).  However, one cannot

tortiously interfere with a contract to which it is a party.  <u>Cox v. CSX Intermodal, Inc.</u>, 732 So. 2d 1092, 1099 (Fla. 1st DCA 1999).  Therefore, Progressive, as a party to the contract with plaintiffs, cannot conspire to tortiously interfere with the contract.  Generally, a tortious interference claim will not lie against representatives of contracting entities.  <u>Id.</u>  It is not clear from the Complaint whether Mitchell and J.D. Power are representatives of Progressive, and plaintiffs allege that the two are in a "joint partnership."  (Doc. #26, ¶ 33.)  As noted, a civil conspiracy requires more than one party.

The Vehicle Valuation Methodology Explanation attached to the Complaint explains the relationship between Mitchell and J.D. Power:

> WorkCenter Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

(Doc. #26-3, p. 10.)  Although it is not possible for a corporation to conspire with itself, <u>Dickerson v. Alachua Cnty. Com'n</u>, 200 F.3d 761, 767 (11th Cir. 2000), here (at least based on the information currently available to the Court), Mitchell and J.D. Power appear to be separate entities capable of conspiring.

Thus, the Court finds that plaintiffs have at least plausibly alleged a civil conspiracy claim against Mitchell and J.D. Power

only.  Since Progressive is a contracting party, it will be dismissed from Count V with prejudice.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   The Progressive Defendants' Motion to Dismiss (Doc. #29) is **GRANTED IN PART AND DENIED IN PART** to the extent that (a) the delegation claim under Count I is dismissed with prejudice, (b) Count II is dismissed without prejudice, (c) paragraphs 56-59 are stricken from the Complaint, and (d) defendants Progressive American Insurance Company and Progressive Select Insurance Company are dismissed from Count V with prejudice.  Otherwise, the Motion is denied.

2.   Mitchell International, Inc. and J.D. Power's Motion to Dismiss Counts III, IV, and V is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __29th__ day of May, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record